IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

A.G. CULLEN CONSTRUCTION, INC.,      )
ARLENE CULLEN, and PAUL CULLEN,      )
                                     )
            Plaintiffs,              )
                                     )
                                     )
      v.                             )      Civil Action No. 08-1238
                                     )      Judge Nora Barry Fischer
                                     )      (Related Case No. 07-765)
TRAVELERS CASUALTY AND SURETY        )
COMPANY OF AMERICA, et al.,          )
                                     )
            Defendants.              )

## MEMORANDUM OPINION

### I.      Introduction

On August 6, 2008, this matter was commenced by Plaintiffs A.G. Cullen Construction, Paul

Cullen and Arlene Cullen ("Plaintiffs") in the Allegheny County Court of Common Pleas at Case

No. GD 08-16178 .  (Docket No. 1; Docket No. 1-3). Thereafter, on August 14, 2008, Plaintiffs filed

an Amended Complaint. (Docket No. 1-3 at 23).   On September 5, 2008, Defendants Travelers

Casualty and Surety Company ("Travelers"), Shawn Pikas, David Dreifuss, Joann Bonacci, and

Dreifuss, Bonacci, and Parker (collectively "Defendants") removed the action to this Court pursuant

to 28 U.S.C. § 1332(a)(1) and § 1441(a).[1] (Docket No. 1 at 3).  Plaintiffs seek damages incurred as

---

[1]      As both parties have stated in their respective filings, Travelers has its principal place of business in
Connecticut, while the individual Defendants reside in Connecticut and New Jersey and Plaintiffs reside in Pennsylvania.
(Docket No. 1 at 2-3). Plaintiffs have claimed damages in excess of $75,000. (Docket No. 1at 3; Docket No. 1-3 at 23-
43).  As such, the elements for diversity jurisdiction have been met. Furthermore, Plaintiffs have not challenged the
removal of this case.

1

a result of Defendants' alleged wrongful use of civil proceedings in the related case of *Travelers Cas. & Sur. Co. v. A.G. Cullen Construction, et al.*, Civ. A. No. 07-765 (W.D. Pa. 2007) (the "underlying action"), in violation of 42 Pa. C.S.A. § 8351. (Docket No. 1-3, *passim*). Specifically, Plaintiffs claim that Defendants wrongfully and maliciously filed an Emergency Motion for Temporary Restraining Order and Motion for Preliminary Injunction in the underlying action (hereafter "underlying motion" or "emergency motion"). (*See* Docket No. 1-3 at 44-53; Civ. A. No. 07-765, Docket Nos. 5-6). Currently before the Court is Defendants' Motion to Dismiss the Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 4). Based on the following, Defendants' Motion [4] is **GRANTED**, in part, and **DENIED**, in part.

## II.    Factual Background

### A.    Relevant Facts from the Underlying Action

This action arises out of the contractual relationship between Travelers and Plaintiffs pursuant to which Travelers is the surety on performance and payments bonds issued to Plaintiffs in connection with a general construction contract between Plaintiffs and Butler County. (Docket No.1-3 at 28, ¶¶ 14, 19).[2] In consideration of these bonds, the parties entered into a General Agreement of Indemnity ("GAI"). (Docket No. 1-5 at 4-11). Plaintiffs Arlene Cullen and Paul Cullen are the individual indemnitors under the terms of the bonds and the GAI, while A.G. Cullen Construction, Inc. stands as both Travelers' principal and indemnitor. (Docket No. 1-4 at 36; Docket No. 1-5 at 1, 6).

---

[2]     For a more detailed recitation of the facts and procedural history of the underlying action through November 4, 2008, see the Court's Memorandum Opinion and Order on the motions to dismiss in that case. (Civ. A. No 07-765, Docket No. 82; *Travelers Cas. & Sur. Co. v. A.G. Cullen, et al.*, Civ. A. No. 07-765, 2008 U.S. Dist. LEXIS 89187 (W.D. Pa. Nov. 4, 2008)).

Plaintiffs were awarded a construction contract with Butler County on January 25, 2006, under which Plaintiffs were to serve as the general contractor for the construction of the Butler County prison (the "project"). (Docket No. 1-3 at 29, ¶ 21). Allegedly, due to shipment delays beyond Plaintiffs' control in receiving the steel supply for the project, Plaintiffs claim that they were unable to begin the project on time, thus delaying the overall completion date. (*Id.* at ¶¶ 23-26). Accordingly, Plaintiffs requested an extension of time in accordance with the terms of their contract with Butler County, to which the County refused. (*Id.* at 30, ¶¶ 28-30). As a result of this refusal, a dispute arose between Plaintiffs and Butler County wherein each accused the other of being in default on the project. (Civ. A. No. 07-765, Docket No. 82 at 4-5).

Plaintiffs claim that Butler County then filed a claim against the performance bond with Travelers and a notice of intent to terminate its contract with Plaintiffs. (Docket No. 1-3 at 30, ¶ 31). Thereafter, Travelers filed the underlying action with this Court against Plaintiffs on June 6, 2007, claiming, *inter alia*, that Plaintiffs refused to deposit funds in a trust account in violation of the GAI. (Civ. A. No. 07-765, Docket No. 82 at 5). Subsequently, Travelers filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction (the "underlying motion") seeking the enforcement of the terms of GAI. (Docket No. 1-3 at 44-53). Specifically, Travelers sought to have the Court order Plaintiffs to deposit funds collected or received in connection with the project into a trust fund account, to adhere to their contractual obligations, and to prohibit any distributions or withdrawals from the account without the express consent of Travelers pursuant to § 9 of the GAI. (*Id.*). They further sought an order requiring Plaintiffs to provide Travelers with access to Plaintiffs' books, papers, records, documents, contracts, reports, financial information, accounts, and electronically stored information pursuant to § 10 of the GAI. (*Id.*). The Court then conducted an

evidentiary hearing on Travelers' motion on July 16, 2007. (Civ. A. No. 07-765, Docket No. 34). Thereafter, the Court denied Travelers' motion, without prejudice, but ordered the parties to proceed to mediation to establish the operation and management of the trust fund account. (Civ. A. No. 07-765, Docket No. 40).

The mediation was held before a neutral approved by this Court, the Honorable Joseph Del Sole, on August 27, 2007. (*Id.*; Docket No. 44). As a result, the parties reached an agreement regarding the day-to-day operation and procedures of the trust fund account. *Id.* In accordance with the agreed upon procedures regarding the trust fund account, Travelers used the deposited funds to make payments to subcontractors and suppliers on the project, in addition to releasing funds to Plaintiffs to pay its own employees and expenses. *Id.*

B.     Relevant Language in the Bonds and GAI

According to the terms of the GAI, Travelers, as the surety, possesses rights to funds received in connection with the project and has the right to demand that any contract funds owed on the project, for which Travelers as beneficiary may be liable under any bond, be held in a trust. (Docket No. 1-5 at 5). Thus, a trust fund was to be established by Plaintiffs, for the benefit of Travelers, to hold funds received on the project or due to subcontractors and suppliers in connection with the construction of the project. (*Id.*). The GAI further states that Travelers has the right to open a trust account to hold such funds and that Plaintiffs shall deposit funds received upon a demand made by Travelers. (*Id.*). Additionally, it provides that Travelers has a collateral security interest in all contract rights, accounts, rights of payment, and general intangibles of Plaintiffs. (*Id.*). Plaintiffs also agreed that, upon a demand made by Travelers, they would deposit additional sufficient funds to compensate Travelers for any loss suffered due to a default under the agreement. (*Id.*).

4

The terms of the GAI also provide that Travelers has the right to determine for itself and Plaintiffs whether any claim or demand made on the bonds shall be paid, compromised, or settled. (Docket No. 1-5 at 4). It further states that this determination made by Travelers shall be binding and conclusive upon Plaintiffs and that Travelers will be entitled to immediate reimbursement for any and all losses incurred as a result of Travelers' payments under the bonds. (*Id.*).

C.    Plaintiffs' Instant Claims Related to the Underlying Action

In late February 2007, before Travelers filed the underlying action, Plaintiffs claim that Travelers "coerced Plaintiffs" to allow Travelers' accountants unabated access for 3 days to Plaintiffs' financial information relating to A.G. Cullen Construction, Inc. (Docket No. 1-3 at 30, ¶ 34). Plaintiffs also claim that as of this point in time, they had satisfied their financial liabilities and that they were continuing to work on the project. (*Id.*). Thereafter, on or about April 17, 2007, Travelers allegedly informed Plaintiffs that it would not issue them any future bonds and that it would spend two days in Plaintiffs' offices inspecting their financial data. (*Id.* at 31, ¶¶ 35-36). Travelers subsequently demanded that Plaintiffs send further financial information, to which demand Plaintiffs claim they complied. (*Id.* at 31, ¶ 38).

On or about June 1, 2007, Plaintiffs contend that Travelers' attorneys, Defendants Shawn Pikas, David Dreifuss, and Joann Bonacci, contacted their attorney, Richard Kalson, stating that Travelers was concerned because Plaintiffs had purchased a residence in St. Maarten and "would move there with as much money as possible." (*Id.* at 31, ¶ 39). Plaintiffs claim that this was an unfounded rumor with no basis in fact and that the residence was purchased well before the project began. (*Id.* at 31, ¶ 40-41). Plaintiffs also aver that the ownership of the St. Maarten residence was

verbally disclosed in Plaintiffs' pre-bond meeting and in a financial statement dated February 22, 2007 completed and provided to Travelers' accountant during his February visit. (*Id.* at ¶ 40). Further, Plaintiffs state that the property was purchased well before Travelers decided to issue bonding to them. (*Id.*). In fact, in the pre-bonding period when Travelers was evaluating Plaintiffs' financial records to decide whether to issue bonds to them, Plaintiffs had already paid forty-five percent of the purchase price of the St. Maarten residence. (Docket No. 4-3 at 19: 2-7). Thus, Travelers was aware of this purchase before their relationship began. (*Id.*). Also, Plaintiffs' attorney, Richard Kalson, repeatedly requested information concerning the person(s) spreading the "rumor" that Plaintiffs were going to flee to St. Maarten with contract funds, but Travelers refused to advise. (Docket No. 1-3 at 31, ¶ 41).

As described above, Travelers thereafter filed the underlying action on June 6, 2007 alleging breach of the contract between Plaintiff and Travelers. It then filed a motion to suspend case activity during settlement negotiations on June 8, 2007. (Civ. A. No. 07-765, Docket No. 11). On June 21, 2007, Travelers moved for a hearing on the underlying motion. (*Id.*; Docket No. 13). A status conference was held on June 28, 2007 wherein the Court addressed the parties' positions as to the motion and the need for a evidentiary hearing. (*Id.*; Docket No. 23)

In support of its motion, Travelers' attorney Defendant Pikas executed a supporting affidavit stating that Travelers was aware of the fact that Plaintiffs owned a residence outside the country and that she heard "rumors" that Plaintiffs were moving documents and money received on the project there. (Docket No. 1-3 at 32, ¶ 44; Docket No. 1-4 at 26). Plaintiffs claim that these statements "were rumor mongering without a factual basis." (Docket No. 1-3 at 32, ¶ 44). Defendant Dreifuss also executed an affidavit in support of the underlying motion for temporary restraining order and

preliminary injunction in which he set forth similar concerns, in addition to concerns about the injury Travelers would suffer if Plaintiffs were not required to deposit funds in a trust account. (Docket No. 1-5 at 36). Specifically, Mr. Dreifuss stated that according to his experience, the situation was "ripe for the surety's indemnitors to seize as much money as they possibly [could] in connection with the bonded projects and to essentially flee to St. Maarten and/or place the money in accounts where the surety would not be able to recover the funds." (Docket No. 1-3 at 38, ¶ 69).

It is Plaintiffs' contention that Travelers' concerns, which served as the basis for its motion, "were at best nothing more than unfounded, unsubstantiated rumors without a basis in fact." (Docket No. 1-3 at 33, ¶ 46). They further argue that Travelers and its attorneys, the individually named Defendants, maliciously published these false rumors with the intent to harm Plaintiffs.[3] (Docket No. 1-3 at 33, ¶ 47-48). Thus, they maintain that Travelers brought the underlying motion in a grossly negligent manner, without probable cause, and without a legitimate purpose. (*Id.* at ¶ 49). Further, Plaintiffs claim that this Court terminated the underlying motion in their favor and acknowledged that the only evidence that Plaintiffs may have wrongfully dissipated funds was "unsubstantiated rumors" that Plaintiffs planned to flee to St. Maarten. (*Id.* at 34, ¶¶ 50-51). With this factual background, Plaintiffs claim damages for wrongful use of civil proceedings, i.e. the prosecution of the underlying motion, against Travelers and individually against each of Travelers' attorneys.

### III.    Procedural History

---

[3]      The Court notes that while Plaintiffs repeatedly refer to these statements of the Defendants as "defamatory," and allege that they were published to various media sources, they have not pled a claim for defamation per se. Under Pennsylvania law, a person may recover for defamation (i.e. libel and slander) which has detracted from his reputation, character, or fame by false and malicious statements. *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 334 (Pa. Super. Ct. 2008)(citations omitted); 42 Pa. C.S. §§ 8341-8345. The Court notes that 42 Pa.C.S. § 5523(1) sets forth a one-year statute of limitations for defamation actions. As this suit was initially filed on August 6, 2008 and the alleged conduct last occurred in June of 2007, any claims for defamation may be time-barred. *Guthrie v. Bradley*, Civ. A. No. 06-619, 2008 U.S. Dist. LEXIS 72027, at *42 (W.D. Pa. Sept. 15, 2008).

On September 26, 2008, Defendants filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket No. 4) and brief in support (Docket No. 5). Plaintiffs filed their brief in opposition on November 14, 2008.[4] (Docket No. 15). Thereafter, on December 23, 2008, Defendants filed their reply to Plaintiffs' opposition.[5] (Docket No. 22). As the motion has been fully briefed, it is now ripe for disposition.

## IV. Standard of Review

In light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)(quoting *Twombly*, 550 U.S. at 570). While *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), allowed dismissal of a claim only if "no set of facts" could support it, under *Twombly,* a claim for relief 12(b)(6)) now "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. In order to satisfy the requirement of Rule 8(a)(2) that a plaintiff include a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must aver sufficient factual allegations in order "to raise a right to relief above the speculative level." *Ayers v. Osram Sylvania, Inc.*, Civ. A. No. 07-1780, 2008 U.S. Dist. LEXIS 72644, at *6 (M.D. Pa. Sept. 24, 2008) (citing *Twombly*, 550 U.S. at 556).

---

[4] Plaintiffs filed two motions for extension of time within which to file an answer to Defendants' motion, which the Court granted making their response due on November 14, 2008. (Docket Nos. 7-10).

[5] On November 24, 2008, Defendants filed a motion for extension of time to file their reply and motion for leave to file excess pages, which were granted by the Court. (Docket Nos. 16-19). Defendants filed a second motion for extension of time to file their reply on December 10, 2008, which the Court also granted, making their reply due on December 23, 2008. (Docket No. 20-21).

In considering a Rule 12(b)(6) motion, a court accepts all of the plaintiff's allegations as true and construes all inferences in the light most favorable to the non-moving party. *Umland v. Planco Fin. Servs.*, Civ. A. No. 06-4688, 2008 U.S. App. LEXIS 19225, at *10 (3d Cir. Sept. 9, 2008) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 n. 8 (3d Cir.1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The failure-to-state-a-claim standard of Rule 12(b)(6) seeks to promote judicial economy by eliminating unwarranted discovery and fact-finding. *United States ex. rel. Repko v. Guthrie Clinic, P.C.*, 557 F.Supp.2d 522, 525 (M.D. Pa. 2008). Therefore, a plaintiff must put forth sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Wilkerson v. New Media Tech. Charter Sch.,* Inc., 522 F.3d 315 (3d Cir. 2008) (citing *Phillips*, 515 F.3d 224; *Twombly*, 550 U.S. at 562). Generally, this does not impose a heightened burden on the claimant above that already required by Rule 8, but instead calls for fair notice of the factual basis of a claim while "rais[ing] a reasonable expectation that discovery will reveal evidence of the necessary element." *Weaver v. UPMC*, Civ. A. No. 08-411, 2008 U.S. Dist. LEXIS 57988, at * 7 (W.D. Pa. July 30, 2008) (citing *Phillips*, 515 F.3d at 234; and *Twombly*, 550 U.S. at 556).

In evaluating a Rule 12(b)(6) motion, a court "may look beyond the complaint to matters of public record, including court files and records ... and documents referenced in the complaint or essential to a plaintiff's claim which are attached to either the [c]omplaint or the defendant's

motion." *Spence v. Brownsville Area Sch. Dist.*, Civ. A. No. 08-0626, 2008 U.S. Dist. LEXIS 55026, at *7 (W.D. Pa. July 15, 2008)(citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also take judicial notice of adjudicative facts contained in court records, whether requested or not, at any stage of a proceeding. *See* FED. R. E. 201(b). Additionally, a court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp.*, 998 F.2d at 1196 (citations omitted). Otherwise, a plaintiff with a legally insufficient claim could survive a motion to dismiss "simply by failing to attach a dispositive document on which it relied." *Id.*

## V.    Discussion

In this diversity action, this Court must apply the substantive law as decided by Pennsylvania's highest court. *Travelers Indem. Co. of Illinois v. DiBartolo*, 131 F.3d 343, 348 (3d Cir. 1997) (citations omitted). The parties do not dispute the application of Pennsylvania law to this matter. Thus, the Court need not engage in a choice of law analysis. Accordingly, Pennsylvania law will be applied.

Plaintiffs assert that Travelers and its attorneys violated 42 Pa.C.S. § 8351, which sets forth the cause of action for malicious use of civil proceedings, through their pursuit of relief by way of the underlying motion. (Docket No. 1-3, 23-43). Specifically, Plaintiffs aver that the underlying motion was filed without probable cause and a proper purpose because Defendants relied upon an unfounded rumor that Plaintiffs were going to flee to St. Maarten with contract funds as the basis for their motion. (*Id.*). They further claim that the motion was sought simply for the purpose of harassing and humiliating Plaintiffs. (*Id.* at 33, 35, 37-38, 40, 42). In order to evaluate the

sufficiency of Plaintiffs' claim, the Court will now review Pennsylvania law construing the statutory cause of action of malicious use of civil proceedings.

A.    Malicious Use of Civil Proceedings

Under 42 Pa.C.S. §§ 8351-8355, also known as the Dragonetti Act, a party may seek redress for harm caused by another's malicious use of civil proceedings. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 394 (3d Cir. 2002). The Act also covers a claim for abuse of process, commonly confused with malicious prosecution, which is separate and distinct in that it provides relief for the use of a legal process to accomplish a purpose for which it is not intended. *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998) (quotation omitted).

The tort of malicious use of civil proceedings is to be interpreted and applied broadly against those who use a legal process as a "tactical weapon to coerce a desired result that is not the legitimate object of the process." *Gen. Refractories v. Fireman's Fund Ins.*, 337 F.3d 297 (3d Cir. 2003(quoting *McGee v. Feege*, 517 Pa. 247, 535 A.2d 1020, 1026 (Pa. 1987)). The Act imposes liability on a party who procures, initiates, or continues civil proceedings against another if:

(1) He acts in a grossly negligent manner or without probable cause and primarily for the purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S. § 8351(a). To prevail on this claim, a plaintiff must prove five elements, all of which are in dispute here. They are as follows:

1.    The defendant has initiated, procured or continued a civil proceeding against the plaintiff;

2.    The proceeding was terminated in plaintiff's favor;

3.    There was an absence of probable cause to bring the

proceeding;
            4.      The proceeding was brought for an improper purpose;
            5.      Plaintiff has suffered damages as a result.

42 Pa. C.S. §§8351-8354.  The party seeking redress under this Act bears a heavy burden. *Higgins*,

281 F.3d at 934. As the parties dispute each of the five elements essential to Plaintiffs' claims,[6] the

Court will address the instant motion as to each element, in turn.

            1.      Initiation of a Civil Proceeding

        Plaintiffs argue that the underlying motion fits the definition of "proceeding" under the

Dragonetti Act. (Docket No. 14 at 7). Specifically, they argue that the use of "proceeding" in the

Act's verbiage demonstrates that Plaintiffs' claims may be based on any single proceeding, not

exclusively actions. (*Id.* at 8).  Thus, a separate proceeding for equitable relief is a proper basis for

liability under the Dragonetti Act. (*Id.* at 10).

        Defendants contend, however, that the underlying motion is not a proceeding for purposes

of the Act because it could not "initiate this lawsuit." (Docket No. 22 at 3).  Defendants attest that

a civil action is only commenced upon the filing of a complaint and that a Dragonetti claim cannot

be based on a motion.  (*Id.*).  They further argue that the motion is not a pleading and that a

Dragonetti claim can only arise from the filing of a complaint. (*Id.*). They also contend that the

motion is part of the underlying action as a whole and cannot be treated as a separate proceeding. (*Id.*

---

[6]

        The parties do not dispute that the individually named Defendants, Travelers' attorneys, may be held liable
under the Act. Additionally, the Court notes that Pennsylvania law provides that an attorney may be held liable in his
individual capacity for initiating a civil proceeding on behalf of his client if it is determined that it was done without
probable cause or with gross negligence.  *Higgins*, 281 F.3d at 394 (citing RESTATEMENT (SECOND) OF TORTS § 674 cmt.
d (citations omitted); *Rosenfield v. Pennsylvania Auto Ins. Plan*, 636 A.2d 1138, 1141 (Pa. Super. Ct. 1994)); *see also
Banner v. Miller*, 701 A.2d 242, 248 (Pa. Super. Ct. 1997).

at 4-5). As the Act requires that the entire "proceeding**s**" be terminated in Plaintiffs' favor and not just a single filing in a lawsuit, their claim must fail. (*Id.* at 5)(emphasis in original).

Pennsylvania statutory law defines "proceeding" to include "every declaration, petition or other application which may be made to a court under law or usage or under special statutory authority, but the term does not include an action or an appeal." 42 Pa. C.S. § 102 (2004). Similarly, Black's Law Dictionary provides that a "proceeding" is not only a complete remedy but also a mere procedural step that is part of a larger action or special proceeding. BLACK'S LAW DICTIONARY 2155 (8th ed. 2004). Black's specifies that a "judicial proceeding" is as any court proceeding initiated to procure an order or decree, whether in law or equity. *Id.* In comparison, the Rules of Civil Procedure define a "motion" as an application to a court for an order. FED. R. CIV. P. 7; 7 *Moore's Federal Practice* § 7.03 (Matthew Bender 3d ed.). Although pleadings are distinct from motions in that they are a statement about claims, both are governed by the same substantive rules. 7 *Moore's Federal Practice* § 7.03 (Matthew Bender 3d ed.).

A review of Pennsylvania case law indicates that separate filings in a lawsuit may, in and of themselves, serve as the basis for a Dragonetti claim. *Lerner v. Lerner*, 954 A.2d 1229 (Pa. Super. Ct. 2008)(court analyzed Dragonetti claim as to a protection from abuse petition). Similarly, federal courts construing Pennsylvania law have found that a "proceeding" for purposes of the Dragonetti Act includes "every declaration, petition or other application which may be made to a court under law." *Grimm v. Borough of Norristown*, 226 F.Supp.2d 606 (E.D. Pa. 2002)(citing *Pellegrino Food Prods. Co. v. City of Warren*, 136 F.Supp.2d 391, 406 (W.D. Pa. 2000)(citing 42 Pa. C.S. § 102))). Additionally, a "proceeding" has been found where a public court record was made of accusations of fraud, despite the fact that the claims were withdrawn. *See Krisa v. Equitable Life. Assurance*

*Soc.*, 109 F.Supp.2d 316, 322 (M.D. Pa. 2000)(court analyzed Dragonetti claim relating to withdrawn motion to amend); *Pirkle v. Ogontz Controls Co.*, Civ. A. No. 86-3374, 1992 U.S. Dist. LEXIS 9591, *20-21(E.D. Pa. July 8, 1992)(court reviewed Dragonetti claim based on a preliminary injunction proceeding without detailed discussion).

Considering the definitions of "proceeding" and motion, and case law construing same, in this Court's estimation, a motion for preliminary injunction is a proceeding for purposes of the Dragonetti Act.[7] It was a separate "proceeding" that sought an equitable order of this Court to enforce the terms of the GAI. A hearing was held on same wherein the Court heard argument and accepted evidence. (Civ. A. No. 07-765, Docket No. 34). Therefore, it may serve as a basis for a malicious use of civil proceedings claim. Accordingly, the Court finds that Travelers' argument that its preliminary injunction motion was not a "proceeding" is without merit.

### 2. Termination of the Civil Proceeding in Plaintiffs' Favor

Defendants also move to dismiss Plaintiffs' claim on the grounds that the underlying motion was not terminated in Plaintiffs' favor because it was partially settled. (Docket No. 5 at 10; Docket No. 22 at 6). Travelers highlights the fact that the motion sought three forms of relief: (1) restraining Plaintiffs from misapplying project funds; (2) requiring them to deposit project funds received into a trust fund account; and (3) directing Plaintiffs to provide Travelers with funds as collateral. (Docket No. 5 at 10-11). As to the first two forms of requested relief, Defendants claim that Travelers received this relief *after* the underlying motion was filed when Plaintiffs consented

---

[7] In arriving at this conclusion, the Court additionally notes the method by which injunctive relief is procured is akin to a mini trial on the merits. Injunctive relief may be requested in a pleading or by motion, with responses thereto, and may be issued only after a valid adjudication of the merits of the action. 13 *Moore's Federal Practice* § 65.65 (Matthew Bender 3d ed). When there is a dispute as to the material facts surrounding a request for injunctive relief, an evidentiary hearing is required. *Id.*

to payments. (*Id.* at 11)(emphasis added). Specifically, as to the second request for relief, the Court ordered the parties to mediate the dispute over the operation of the agreed upon trust fund account, and the mediation resolved the issues pertaining to same. (*Id.*).

Defendants further argue for dismissal on the basis that the parties' "settlement" discussions relating to the issues addressed by the underlying motion took place after the motion was filed and that Plaintiffs' counsel, Richard Kalson, admitted that they were making payments pursuant to the GAI in order to satisfy Travelers. (*Id.* at 12). They contend that the mediation before the Honorable Joseph Del Sole "settled" the narrow dispute concerning the operation and management of the trust fund account. (*Id.* at 13). Thus, even though the emergency motion was denied, Travelers obtained the relief it sought in regard to two of its claims; therefore, Plaintiffs' claims here must fail. (*Id.* at 13-14). Defendants do not address the third element of Travelers' request, i.e. for collateral security.[8]

Defendants next argue that the proceeding was not terminated because the underlying action remains pending and a cause of action for malicious use of civil proceedings does not accrue until a party defeats all attempts of the opposing party to obtain relief. (Docket No. 5 at 14-15 (citations omitted)). Therefore, they maintain that Plaintiffs' claims are premature. (Docket No. 5 at 15).

In response, Plaintiffs argue that the underlying motion was terminated in their favor by this Court's denial of the motion. (Docket No. 14 at 15). That is, once this Court entered its order, Travelers was "entirely out of court concerning their emergency equitable claims," and thus, the proceeding was terminated in their favor. (*Id.*). Plaintiffs further contend that this order was "final"

---

[8]  The issue over collateral security is still disputed by Travelers and the Cullens in the underlying action.

because Travelers "lack[ed] a legal foundation to re-initiate the proceeding," thereby putting Travelers "wholly out of court." (*Id.* at 16).

For purposes of the Dragonetti Act, a proceeding is terminated when a final order is entered. *Bannar*, 701 A.2d 232. If the final order puts the litigant "out of court" for the relief they are seeking, then it is considered terminated. *Id.* In other words, a proceeding has been terminated when a court enters an adjudication of the claim, the party withdraws the proceeding or when it is dismissed for failure to prosecute. RESTATEMENT (SECOND) OF TORTS § 674 cmt. j. (1977). The determination of whether a proceeding was "terminated" is fact specific and depends on the circumstances of the ultimate outcome. *Banner*, 701 A.2d at 238.

Pennsylvania law allows a party to bring a claim for malicious use of civil proceedings based upon a separate action in a pending lawsuit. *See Krisa*, 109 F.Supp.2d at 322. This Court's order denying the underlying motion (Civ. A. No. 07-765, Docket No. 40) effectively terminated the motion. A plaintiff need not wait until that lawsuit has concluded to bring a claim based on a pleading filed therein. *Krisa*, 109 F.Supp.2d at 322. Thus, Travelers' argument that the proceeding was not terminated because the underlying suit is still pending fails. Additionally, because the order denying the underlying motion adjudicated the merits of the motion as to the remaining issues not resolved by the mediation, this Court considers it a final order for purposes of Plaintiffs' present claims. (*See* Civ. A. No. 07-765, Docket No. 40 at 2-3). Accordingly, the Court now turns to whether the motion was terminated in Plaintiffs' favor.

The termination of a proceeding as a result of compromise or agreement does not generally constitute a termination favorable to the party against whom the proceeding was brought. *Rosenfield*, 636 A.2d at 1142 (citing RESTATEMENT (SECOND) OF TORTS § 674 cmt. j. (1977));

16

*D'Elia v. Folino, et al.*, 933 A.2d 117, 121 (Pa. Super. Ct. 2007). Whether a settlement constitutes a termination, and a favorable one at that, depends on the circumstances under which the proceedings were terminated. *D'Elia*, 933 A.2d at 122. For example, where the parties agree jointly to end the underlying proceeding in a "non-litigious" manner, there can be no favorable termination within the meaning of 42 Pa. C.S. § 8351. *Id.* at 122-23. In addition, Pennsylvania courts have held that proceedings are not terminated in favor of the party against whom they were brought when the parties agree to settle the issue pursuant to agreement representing a compromise. *See Electronic Laboratory Supply Co. v. Cullen*, 712 A.2d 304, 310-11 (Pa. Super. Ct. 1998).

Here, it is somewhat questionable whether the allegedly offending proceeding was completely terminated in Plaintiffs' favor. Although the emergency motion was denied by this Court without prejudice, one of the remedies being sought by Defendants was the establishment of a trust fund account to manage the contract funds. (Civ. A. No. 07-765, Docket No. 5 at 6). Before the Court ruled on said motion, Plaintiffs had begun to make payments to subcontractors on the project, one of the remedies sought by the motion. Furthermore, the parties agreed upon the establishment of the trust fund account and agreed to mediate issues pertaining to its operation and management. In fact, the mediation was fruitful in that the parties settled the issues over the parameters and day-to-day operation of the trust fund account. (*Id.*, Docket No. 44). Therefore, the issues surrounding the operation and management of the trust fund account were not terminated in Plaintiffs' favor as defined by the Dragonetti Act. *Rosenfield*, 636 A.2d at 1142 (resolution of a proceeding by agreement does not constitute a favorable termination). Nevertheless, this Court denied the emergency motion as to the remaining request for relief, i.e enforcement of §10 of the GAI, because Travelers had not demonstrated that Plaintiffs were wrongfully dissipating funds given its reliance

on unsubstantiated rumors. (Civ. A. No. 07-765, Docket No. 40 at 3). Thus, the underlying motion was partly terminated in Plaintiffs' favor.

### 3. Probable Cause or Gross Negligence

Defendants also argue that their motion seeking injunctive relief was supported by requisite probable cause given Travelers' rights as outlined in the GAI and the representations made by Plaintiffs. (Docket No. 5 at 17). Specifically, Travelers argues that the GAI granted it the right to seek legal action to protect project funds and prevent it from incurring substantial monetary losses if a party was deemed to be in default under the GAI. (*Id.*). Based upon correspondence from both Butler County and Plaintiffs detailing their construction dispute, Travelers became concerned that it would incur a major loss if Plaintiffs did not abide by the terms of the GAI. (*Id.* at 18). Therefore, Travelers argues, it was proper to seek legal assistance to enforce the terms of the GAI. (*Id.*).

In response, Plaintiffs contend that Defendants lacked probable and, in the alternative, were grossly negligent in their "utter want of care in their investigation underlying" the motion and their "publication of unfounded, unsubstantiated rumors" to the Court. (Docket No. 14 at 11). Plaintiffs argue that the crux of their case is Defendants' unfounded accusations that Plaintiffs would abscond to St. Maarten with project funds. (*Id.*). Thus, they claim that Defendants egregiously pursued the underlying proceeding solely for the purpose of humiliating and intimidating the Plaintiffs. (*Id.* at 12). Plaintiffs further argue that there was no basis in law for the underlying motion because the law is clear that injunctive relief is an improper remedy for supposed economic harm.[9] (*Id.*). Hence, Defendants' attorneys could not have had probable cause in their belief that Travelers would be entitled to relief. (*Id.*).

---

[9] *See* discussion, *infra*, at p. 21.

a. Probable Cause

Under the Dragonetti Act, a plaintiff has the burden to show that the defendant lacked probable cause for his action. *See* 42 Pa. C.S. § 8354(3). A person has probable cause to initiate a proceeding if in doing so "he reasonably believes in the existence of the facts upon which the claim is based" and that under those facts "reasonably believes … the claim may be valid under existing or developing law." 42 Pa. C.S. § 8352(1). When the actor reasonably believes in the facts supporting his claim and "believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge or information," then he has probable cause.[10] 42 Pa. C.S. § 8352(2). Probable cause may also be found when the attorney of record believes in good faith that the proceeding is not intended to merely harass or maliciously injure the opposition. 42 Pa. C.S. § 8352(3). Indeed, the existence of probable cause will defeat a claim for malicious use of civil proceedings, even if the defendant acted with malice. *Am. Int'l. Airways, Inc. v. Am. Int'l. Group, Inc.*, 816 F.Supp.1058, 1061 n. 7 (E.D. Pa. 1993)(citing *Meiksin v. Howard Hanna Co.*, 590 A.2d 1302, *appeal denied*, 528 Pa. 644(1991)). However, the failure of the probable cause prong of the statute does not defeat a claim for wrongful use of civil proceedings as the terms of the statute permit a cause of action to be based on lack of probable cause *or* gross negligence. *Bannar*, 701 A.2d at 249; 42 Pa. C.S. § 8351(1)(emphasis added).

Pennsylvania law further holds that "probable cause is properly determined by the court when there are no material conflicts in the evidence." *Bannar v. Miller*, 701 A.2d 242, 248 (Pa. Super. Ct. 1997). However, questions of fact arise when material facts central to the issue of whether probable

---

[10] Reasonableness is determined on an objective basis. *Banner*, 701 A.2d at 248. The reasonableness of a party's actions has been held to be question of fact to be decided by a jury. *Schmidt v. Currie*, 470 F.Supp.2d 477, 483 (E.D. Pa. 2005); *see also McKibben v. Schmotzer*, 700 A.2d 484, 493 (Pa. Super. Ct. 1997)(the question as to the existence of probable cause may be submitted to the jury when material facts are in controversy).

cause existed are disputed. *Broadwater v. Sentner*, 725 A.2d 779, 782 (Pa. Super. Ct. 1999), *appeal denied*, 562 Pa. 664 (2000). When the question of probable cause is a mixed question of law and fact, then it cannot be answered as a matter of law by a court. *Bannar*, 701 A.2d at 249.

b. Gross Negligence

The clear language of section 8351 of the Act permits a wrongful use of civil proceedings claim to be based on gross negligence. *Bannar*, 701 A.2d at 249. Therefore, if probable cause is present, a defendant can still be held liable if he acted in a grossly negligent manner. 42 Pa.C.S. §8351(a)(1); *Bannar*, 701 A.2d at 249. For purposes of the Dragonetti Act, gross negligence is defined as "the want of even scant scare." *Ratti v. Wheeling Pittsburgh Steel Corp.*, 758 A.2d 695, 703 (Pa. Super. Ct. 2003). Similarly, Black's defines it as the "lack of slight diligence or care" or "a conscious, voluntary act or omission in reckless disregard of a legal duty." BLACK'S LAW DICTIONARY (8th ed. 2004).

In order to properly evaluate whether Travelers and its attorneys had probable cause to pursue the underlying motion or if they acted with gross negligence, the Court must review the circumstances surrounding said motion. The Court now turns to these circumstances and describes its understanding of same.

As a result of the dispute between Plaintiffs and Butler County, on May 1, 2007, Plaintiff Arlene Cullen wrote a letter to Butler County stating that if Plaintiffs were not paid a disputed withheld retainage, Plaintiffs would suspend work or terminate the construction contract. (Docket No. 1-5 at 14-16). Plaintiffs' subcontractor, Cost Company, received a copy of this letter and subsequently, on May 31, 2007, notified Butler County that it was owed over $1.2 million (*Id.* at 21). On June 1, 2007, Butler County directed Cost Company to pursue its payment from Travelers (*Id.*

20

at 20) while counsel for Butler County simultaneously notified Travelers and its counsel Defendant Shawn Pikas of these issues surrounding the project. (*Id.*). Thereafter, Travelers and Plaintiffs, through their respective counsel, exchanged correspondence regarding Travelers' concerns about the use of project funds. (Civ. A. No. 07-765, Docket No. 34-4, 34-5, 34-6, 34-7, 34-8). A review of those documents reveals that as of May 31, 2007, Plaintiffs were reluctant to assuage Travelers' concerns and to agree to depositing project funds in a trust fund account. (Civ. A. No. 07-765, Docket No. 34-8 at 3). Travelers then initiated the underlying action and filed its motion on June 6, 2007. (*Id.*, Docket Nos. 1 - 6).

Two days later, Travelers filed a motion which was granted to suspend case activity while the parties engaged in settlement negotiations. (*Id.*, Docket Nos. 11, 12). However, on June 21, 2007, Travelers moved for a hearing on its request for injunctive relief and informed the Court that the parties were able to agree on distributions to subcontractors but that issues still existed as to the remaining contract funds. (*Id.*, Docket No. 13 at 1-2). On June 28, 2007, this Court held a status conference with counsel wherein Plaintiffs' counsel, Richard Kalson stated that as of that date, Plaintiffs were distributing payments out of the $2 million in project funds at issue to subcontractors. (Docket No. 4-3 at 16: 9-20). Further, Plaintiffs agreed to the creation of the trust fund account and to have all payments due on the project reviewed and signed off by Attorney Kalson. (Civ. A. No. 07-765, Docket No. 32 at 16, 35). Plaintiffs also agreed that they would continue to fulfill their obligations. (*Id.* at 19:24-25; 20:1-3).

Also, at this status conference, Plaintiffs, through counsel, claimed that Travelers calling them "crooks" and having such reports in the newspapers wasn't helping Plaintiffs' efforts to get paid by Butler County. (Docket No. 4-3 at 14:7-13). Counsel further stated that Travelers'

accusation that Plaintiffs were going to abscond with $2 million interfered with the continuation of work on the project and that these accusations were unfounded especially because the St. Maarten residence was purchased before Travelers issued them bonding. (*Id.* at 14:14-20). Despite being asked numerous times, Travelers wouldn't disclose to Plaintiffs who told them that Plaintiffs were going to leave the country. (*Id.* at 14:19-22). Counsel further asserted that when the Travelers' attorneys became involved and pursued the injunction, Plaintiffs had a $60 million backlog in construction projects. (*Id.* at 17:23-25; 32: 12-19). The Court then scheduled a hearing on the preliminary injunction request, solely to resolve the issue of handling remaining contract funds and distributing future payments through the operation of the trust fund account. (*Id.* at 43).

A review of the substantive law pertaining to the underlying proceeding is informative to this Court on the issue of whether probable cause existed or if Defendants acted with gross negligence. *See Gigli v. Palisades Collection, LLC*, Civ. A. No. 06-1428, 2008 U.S. Dist. LEXIS 62684, at * 47(M.D. Pa. Aug. 14, 2008)(citing *Broadwater v. Sentner*, 725 A.2d 779, 783 (Pa. Super. Ct. 1999)). Because Travelers sought emergency injunctive relief in the proceeding at issue, the Court turns to the standard for awarding such relief.

It is well-settled law that potential economic harm does not rise to the level of irreparable harm necessary for emergency injunctive relief. *See Acierno v. New Castle Cnty.*, 40 F.3d 645 (3d Cir. 1994)(quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989))("In general, to show irreparable harm a plaintiff must 'demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.' Economic loss does not constitute irreparable harm"). However, a breach of trust and/or fiduciary obligation can constitute harm that has no adequate remedy at law. *American Express Travel Related Servs. v. Laughlin*, 623

A.2d 854 (Pa. Super. Ct. 1993; and *F.T. International, Ltd. v. Mason*, Civ. A. No. 00-5004, 2000 WL 1514881, at *1 (E.D. Pa. Oct. 11, 2000). In fact, in *American Express* and *F.T. International*, emergency injunctive relief was awarded upon evidence that the opposing parties concealed or wrongfully dissipated the funds in question. *American Express*, 623 A.2d 854.

Travelers relied on *American Express* and *F.T. International* in support of its request for injunctive relief arguing Plaintiffs were wrongfully dissipating project funds. (*See* Civ.A. No. 07-765, Docket No. 6 at 17). Specifically, Travelers' counsel argued that Plaintiffs' breach of trust, i.e. breach of the GAI, could not be quantified in terms of monetary damages, as "only specific enforcement of Travelers' rights as a trust beneficiary is sufficient to prevent the numerous harmful impacts that will otherwise arise from a defalcation of the Trust Funds." (*Id.*). Travelers further argued that by executing the GAI, Plaintiffs voluntarily agreed to treat funds received on the project as trust funds and that forcing Plaintiffs to limit their use of said funds to a trust purpose would do nothing more than enforce the already existing contractual restrictions. (*Id.* at 19). Additionally, the relief sought would insure that Plaintiffs would abide by their fiduciary obligation under the GAI that the trust funds only be used for project completion purposes. (*Id.*). Travelers claimed that this was necessary "in light of [Plaintiffs'] position that they have beneficial ownership" of the project funds and because they refused to give Travelers assurances that they intended to complete the project. (*Id.*).

In this Court's estimation, Travelers' knowledge at the time the underlying motion was filed is determinative of whether it had probable cause to pursue the course it took. At that time, Plaintiffs were about to receive payment in excess of $2 million for their work on projects insured by Travelers, money which Plaintiffs described to Travelers as funds in which they had a beneficial

23

interest, despite terms in the GAI to the contrary. (Docket No. 1-4 at 26; Docket No. 1-5 at 14-16). There was also a pending subcontractor claim against Plaintiffs in excess of a $1 million. (Docket No. 1-5 at 17-21). Thus, Travelers was in a position to lose more than $3 million in the event that Plaintiffs did not abide by the terms of the GAI in depositing funds into a trust fund account. However, this Court declined to award the relief sought by Travelers because the evidence presented at the hearing was insufficient to show that Plaintiffs were trying to conceal or wrongfully dissipate funds. (Civ. A. No. 07-765, Docket No. 40 at 3). The Court explained that the only evidence that Plaintiffs may have wrongfully dissipated funds were "unsubstantiated rumors that [they] plan[ned] to flee to St. Maarten," and this was insufficient to show irreparable harm. (*Id.*). However, this Court further reasoned that the relief Travelers sought was unwarranted because Plaintiffs had already deposited funds as required into the trust fund opened by Travelers and, after the motion was filed but before the Court ruled upon it, Plaintiffs had paid the subcontractors.[11] (*Id.*).

In viewing the evidence in the light most favorable to Plaintiffs, this Court is unable to conclude as a matter of law whether probable cause existed when Travelers filed the underlying motion or that Travelers and its attorneys were not grossly negligent. To that end, it is difficult for this Court to determine whether Travelers had a reasonable basis for bringing its emergency motion when there is no record evidence as to why it believed Plaintiffs would flee. In fact, Travelers' concerns about Plaintiffs' alleged plan to relocate to St. Maarten with project funds seem unfounded to this Court as the St. Maarten residence was disclosed to Travelers pre-bonding. In support of their argument that Defendants were grossly negligent, Plaintiffs claim that Defendants proffered their

---

[11] As noted, the Court also ordered the parties to proceed to mediation to resolve the issue over operation of the trust fund. (Civ. A. No. 07-765, Docket No. 40 at 3).

allegations to the Court despite their knowledge that they were nothing more than unsubstantiated rumors.[12] (Docket No. 1-3 at 33, ¶ 46). They also claim that Defendants pursued the emergency motion based upon false averments of fact published by the Defendant attorneys, thereby maliciously injuring Plaintiffs. (*Id.* at 33, ¶ 49). In this Court's estimation, lack of probable cause and gross negligence have been sufficiently pled by Plaintiffs to set forth a claim for malicious prosecution; therefore, this claim should proceed through discovery.

4.    Travelers' Primary Purpose

Defendants contend that their primary purpose for bringing the emergency motion was to secure a proper adjudication of their claims pursuant to the GAI. (Docket No. 5 at 19). Specifically, they argue that the record amply shows that both before and after the motion was filed, their goal was to secure this Court's determination that they were entitled to enforcement of their rights under the GAI. (*Id.*). Based upon the correspondence from Plaintiffs, Butler County and various subcontractors, discussed above, Travelers claims it had valid concerns regarding the project funds. (*Id.*). In addition to these concerns, Travelers also learned the following facts: employees of Plaintiff A.G. Cullen Construction, Inc. were leaving the company; Plaintiffs had made repeated references to their financial distress; and that they had a residence in St. Maarten and may have been moving documents and funds there. (*Id.* at 20). Travelers claims that it did not rely on these facts in a vacuum, but attempted to resolve the matter with Plaintiffs' counsel, Richard Kalson. (*Id.*). Despite

---

12

        The Court also points out that any and all pleadings submitted by Travelers, through counsel, containing references to Plaintiffs' residence in St. Maarten and Travelers' fears concerning same became immediately accessible to the public through the court's district's online filing system CM/ECF. *See* https://ecf-live.pawd.circ3.dcn/cgi-bin/ShowIndex.pl.

        The Court further notes that after Travelers filed the emergency motion, newspaper articles ensued detailing the allegations made by Travelers. See http://www.post-gazette.com/pg/07159/792523-54.stm; last visited February 13, 2009; and http://www.pittsburghlive.com/x/pittsburghtrib/news/cityregion/s_515313.html; last visited February 13, 2008.

these attempts, Defendants maintain that Plaintiffs did not affirmatively address Travelers' concerns. (*Id.*). Additionally, Defendants assert that Plaintiff Arlene Cullen accused Travelers' attorney, Shawn Pikas, of trying to take "her one million dollars they had earned." (*Id.*). Based on these facts and its rights under the GAI, Travelers argues that it had a legitimate basis upon which to file its motion seeking an injunction, that is, to ensure that the contract funds were being properly used to complete the project and pay subcontractors. (*Id.*).

Plaintiffs claim that Defendants had no evidence that they would "abscond" to St. Maarten nor that they would not fulfill their payment obligations toward subcontractors. (Docket No. 14 at 12-13). Moreover, they assert that Defendants had every opportunity to address their concerns about the vacation residence prior to issuing bonds to Plaintiffs. (*Id.* at 13). Plaintiffs' attorney, Richard Kalson, explained to Travelers that their financial situation was the result of Butler County's misconduct, that all project funds were being properly handled, and that the rumor about Plaintiffs' potential flight was false. (*Id.* at 14). Thus, Plaintiffs argue that when Defendants filed their motion, they had no credible evidence to support it. (*Id.*). Therefore, they maintain that their present claims must survive Defendants' motion to dismiss. (*Id.*).

For purposes of the Dragonetti Act, improper purpose may be inferred from want of probable cause to maintain or continue a proceeding. *Buchleitner v. Perer*, 794 A.2d 366, 377 (Pa. Super. Ct. 2002). Although such an inference is permissible, it is not required. *Id.* A cognizable cause of action for wrongful use of civil proceedings requires that Defendants have acted "in a grossly negligent manner *or* without probable cause" *and* "primarily for an [improper] purpose." 42 Pa.C.S. § 8351(a)(emphases added). Plaintiffs bear the burden in proving these critical elements. *Alberty*

*v. Nationwide Mut. Ins. Co.*, Civ. A. No. 05-1319, 2006 U.S. Dist. LEXIS 68783, *13 (W.D. Pa. July 7, 2006).

Plaintiffs claim that their attorney, Richard Kalson, informed Travelers that Plaintiffs were fulfilling their obligations in the project and that the rumor was blatantly false. (Docket No. 14 at 14). Despite Plaintiffs' requests, Defendants would not disclose the source of the rumor on which they relied. Plaintiffs should be able to probe Travelers' knowledge and/or reliance on the alleged rumor in proceeding to file its motion for emergency relief. As this Court cannot decide mixed questions of fact and law, *Bannar*, 701 A.2d at 249, allowing Plaintiffs' claims to proceed through discovery will demonstrate whether Travelers and its attorneys acted with a proper purpose and/or whether they were grossly negligent in the pursuit of injunctive relief.

     5.     Damages

Under the Dragonetti Act, when the essential elements of a malicious prosecution claim have been established, a plaintiff is entitled to recover for the following: (1) harm suffered during the course of the proceeding; (2) harm to his reputation by alleged defamatory matter as the basis of the proceedings; (3) expenses, including attorney's fees, that have been incurred in defending against the proceedings; (4) any specific pecuniary loss caused by the proceedings; (5) any emotional distress caused by the proceedings; and (6) punitive damages. 42 Pa.C.S. § 8353; *Stone Crushed P'ship v. Jackson*, 589 Pa. 296, 299 n.1 (Pa. 2006).

At paragraphs 60, 65, 72, 79, and 87 of their Amended Complaint, Plaintiffs have alleged the following damages: (a) embarrassment, humiliation, and harm to reputation; (b) loss of future business, income, and profits; (c) loss of bonding capacity; (d) attorney's fees and expenses incurred in defense of the wrongful proceedings; (e) all other economic losses resulting from the wrongful

proceedings; (f) emotional distress, mental anguish and trauma; and (g) all other damages as permitted by law. (Docket No. 1-3, *passim*). Therefore, they demanded judgment in their favor and against Defendants in excess of $25,000 plus costs, attorney's fees, and punitive damages.[13] (*Id.*). Viewing these allegations in accordance with section 8353 of the Dragonetti Act, this Court finds that Plaintiffs have sufficiently pled potentially recoverable damages.

### B. Abuse of Process

In their brief in opposition to Defendants' motion (Docket No. 14), Plaintiffs also argue that they have alleged sufficient facts to establish a claim for abuse of process. (Docket No. 14 at 16). Specifically, they claim that Defendants pursued the underlying motion "solely for the purpose of humiliating and injuring Plaintiffs via defamatory pleading" and reliance upon unfounded "damaging rumors." (*Id.* at 17-18). Therefore, Plaintiffs argue that Defendants' motion to dismiss should be denied because the facts as pled give rise to an alternative theory of liability. (*Id.*).

Defendants first respond by noting that Plaintiffs have not pled a claim for abuse of process in their Amended Complaint. (Docket No. 22 at 16). Second, they argue that any claim for abuse of process must fail because Plaintiffs have not demonstrated that Defendants either perverted the legal process or perverted its purpose in bringing their motion for injunctive relief. (*Id.* at 19). There is no evidence, Defendants contend, indicating that the underlying motion was used for a purpose other than to obtain equitable relief. (*Id.*). As before, they maintain that Travelers simply sought enforcement of its purported right to protect the contract funds and to obtain collateral security as delineated in the GAI. (*Id.* at 20).

---

[13] As this case was initially brought in state court, Plaintiffs have claimed compensatory damages in the amount of $25,000, plus costs, attorney's fees and punitive damages individually against Travelers, each of its attorneys and their law firm. (Docket No. 1-3 at 36-37, 39-40, 42).

Pennsylvania common law defines abuse of process as "the legal process against another primarily to accomplish a purpose for which it is not designed." *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. Ct. 2002)(quoting *Rosen*, 627 A.2d at 192); *Pellegrino*, 136 F.Supp.2d at 407. That is, to demonstrate a cause of action for abuse of process, a plaintiff must show that the defendant (1) used a legal process; (2) primarily to accomplish a purpose for which the process was not designed; and (3) that harm was caused as a result. *Id.* Abuse of process is separate and apart from malicious use of civil proceedings in that it involves a "perversion of the legal process" after the legal process has been initiated. *Gen. Refractories,* 337 F.3d at 304; *see also United States ex. rel. Magid v. Barry Wilderman, M.D.*, Civ. A. No. 96-cv-4346, 2005 U.S. Dist. LEXIS 2926, *2 (E.D. Pa. Feb. 28, 2005). However, both torts are subsumed within the general scope of the Dragonetti Act. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383 (3d Cir. 2002); *Gen. Refractories*, 337 F.3d at 306-306. Abuse of process will not be found where a defendant has done nothing more than pursue the process to its authorized conclusion, even though it may have been with bad intentions. *Hart v. O'Malley*, 647 A.2d 542, 552 (Pa. Super. Ct. 1994). This tort usually pertains to situations where one party has coerced another party by means of extortion, attachment, garnishment, or blackmail. *Edwards v. Wyatt*, Civ. A. No. 01-1333, 2001 WL 1382503, at *4 (E.D. Pa. Nov. 6, 2001)(citation omitted).

Within the purview of an abuse of process claim, the term "process" is defined as a "document evidencing a command of a court." 42. Pa. C.S. §102 (2004). Pennsylvania law further interprets the term "process" to include all of the procedures incident to the litigation process. *See Pellegrino*, 136 F.Supp.2d at 407 (citing *Rosen*, 627 A.2d at 192). The emergency motion sought by Defendants was a procedural step of the underlying litigation which requested that this Court order

injunctive relief. Thus, the Court finds that Plaintiffs have established that Defendants used a legal process against them, the first element of the tort.

For the second element, Plaintiffs claim that Defendants wrongfully pursued the emergency motion "solely for the purpose of humiliating and injuring [them] via defamatory pleadings." (Docket No. 15 at 17-18; *see also* Docket No. 1-3 at 33, ¶ 49). They further contend that Defendants' "insistence on presenting unfounded, damaging rumors ... despite [their] knowledge that there was no basis" was done with the "sole intent of harming and defaming Plaintiffs" and/or coercing Plaintiffs to compliance with Travelers' demands. (Docket No. 15 at 18). Viewing these allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have set forth sufficient facts making it plausible that Travelers and its attorneys may have perverted the legal process for an unintended purpose, i.e. to humiliate, harass and coerce. *Twombly*, 550 U.S. at 562. The Court additionally finds that even though the emergency motion was carried out to unauthorized conclusion, Plaintiffs allegations make it plausible that it was brought in a grossly negligent fashion. *C.f. Ickes v. Flanagan*, Civ. A. No. 07-143, 2008 U.S. Dist. LEXIS 25683 (W.D. Pa. March 31, 2008)(abuse of process claim dismissed because there was no evidence of illegitimate objective). For the same reasons as discussed above with regards to Plaintiffs' claimed damages for Defendants' alleged malicious use of civil proceeding,[14] the Court also finds that Plaintiffs have set forth sufficient allegations that they were harmed by Defendants' alleged abuse of process. Accordingly, if Plaintiffs wish to proceed on this theory, they shall file an amended complaint to set forth a claim for abuse of process.

---

[14] *See* discussion *infra*, Section V(A)(5).

**VI.      Conclusion**

Based on the foregoing, Defendants Travelers Casualty and Surety Company of America, Shawn A. Pikas, Esquire, David C. Dreifuss, Esquire, Joan Bonacci, Esquire and Dreifuss Bonacci and Parker's Motion to Dismiss [4] Plaintiffs A.G. Cullen Construction, Inc., Arlene Cullen, and Paul Cullen's Amended Complaint [1-3] is **GRANTED**, in part, and **DENIED**, in part.  It is denied without prejudice as to Plaintiffs' claims for malicious use of civil proceedings.  For the above reasons, this Court finds that Plaintiffs are entitled to proceed through discovery.  Defendants may reassert their arguments at the summary judgment stage of the litigation.  It is granted as to any alleged abuse of process claim.  Based on the above reasons, the Court cannot hold at this stage that Plaintiffs do not have a claim for abuse of process.  *C.f. Finney v. Royal Sun Allegiance Ins.  Co.*, Civ. A. No. 04-1086, 2005 U.S. Dist. LEXIS 18413, *20(W.D. Pa. Aug. 29, 2005)(court granted summary judgement for defendant on abuse of process clause because there was no evidence of improper motive, only sheer speculation).  However, to the extent Plaintiffs seek to bring an abuse of process claim, they shall amend their Amended Complaint on or before March 4, 2009.  An appropriate order follows.


                                                              *s/Nora Barry Fischer*
                                                              Nora Barry Fischer
                                                              United States District Judge


CC/ECF:        All counsel of record.
Date:          February 13, 2009.